**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil No. |
| ) | |
| v. ) | Filed: |
| ) | |
| PROFESSIONAL CONSULTANTS ) | |
| INSURANCE COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

**FINAL JUDGMENT**

WHEREAS, Plaintiff, United States of America, filed its Complaint on June 24, 2005, alleging Defendant's violation of Section 1 of the Sherman Act, and Plaintiff and Defendant, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by Defendant, or any other entity, as to any issue of fact or law;

AND WHEREAS, Defendant agrees to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prohibition of certain alleged information exchanging activities;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

I. Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to this action. For purposes of this Final Judgment only, Defendant stipulates that the Complaint states a claim upon which relief may be granted against Defendant under Section 1 of the Sherman Act, as amended (15 U.S.C. § 1).

II. Definitions

A. "PCIC" means Professional Consultants Insurance Company, Inc., any of its successors and assigns, subsidiaries, divisions, affiliates, partnerships, and joint ventures, and any of their directors, officers, managers, agents, and employees when serving in such capacity.

B. "PCIC member" or "member" means any current shareholder of PCIC, any shareholder added to PCIC membership at any time during the term of this Final Judgment, any of such shareholders' successors and assigns, any of their subsidiaries, divisions, partnerships, and any of their directors, officers, managers, agents, and employees when serving in such capacity.

C. "PCIC business requirements" means rating, assessing, or underwriting professional liability insurance for current PCIC members or firms under consideration for PCIC membership; allowing PCIC board members to make informed decisions about whether to accept or deny membership as to prospective members; preparing reinsurance submissions and responding to reinsurers' requests for information; allowing PCIC board members to evaluate PCIC's risk profile, the risk profile of firms under consideration for PCIC membership and otherwise meet fiduciary obligations to PCIC; allowing PCIC members to make informed decisions about continued participation in PCIC or potential members to make informed decisions about participating in PCIC; and responding to requests for information by auditors and

regulatory agencies.

D. "Actuarial consulting services" means any actuarial services provided by actuarial consulting firms to any clients of such firms, including but not limited to any such services relating to employee benefit plans.

E. "Aggregated information" means information that reflects aggregation of information as to different clients, transactions, or service offerings. "Aggregated information" does not include information that is specific to individual identifiable clients or transactions.

F. "Agreement" means any agreement or understanding, formal or informal, oral or written.

G. "Communicate" means to provide, disclose, disseminate, solicit, share, or exchange information in any manner or form, including by oral, written, or electronic means.

H. "LOL" means contractual limitations of liability in the provision of actuarial consulting services.

I. "LOL information" means information about an actuarial consulting firm's use of LOL and information regarding an actuarial consulting firm's plans, policies or practices relating to its use of LOL.

J. "Prohibited LOL Information" means current, client specific information about an actuarial firm's use of LOLs and information regarding an actuarial firm's current or future plans, policies or practices relating to its use of LOLs.

III. Applicability

A. This Final Judgment applies to PCIC, as defined above, each consenting PCIC member individually, and all other persons in active concert or participation with PCIC who receive actual notice of this Final Judgment by personal service or otherwise.

B.  PCIC shall require, as a condition of membership in PCIC, that each PCIC member consent to be bound by the Judgment, throughout the term of the Judgment, regardless of whether the member continues or discontinues PCIC membership or whether PCIC continues or ceases to exist as an entity.

### IV.  LOL Provisions

A.  PCIC shall not communicate LOL information to any PCIC member or other representative of PCIC, or to any representative of any PCIC member, except as limited to the following extent:

1.  PCIC's Antitrust Compliance Office, to be established by PCIC pursuant to ¶ V.A. of this Final Judgment, and/or an independent third party working with PCIC's Antitrust Compliance Office, and in a format approved by PCIC's Antitrust Compliance Office, may communicate historical and aggregated LOL information to members of PCIC's board of directors (including alternate directors), professional and administrative service providers working for PCIC, and the respective senior management of PCIC's members regularly involved in decision-making with respect to PCIC's business requirements, solely for purposes of and only as reasonably necessary to accomplish PCIC business requirements.  PCIC's Antitrust Compliance Office may also communicate historical and aggregated LOL information to a prospective member of PCIC if requested by the prospective member for the purpose of making an informed decision about participating in PCIC.

2.  LOL information communicated pursuant to ¶ IV.A.1. of this Final Judgment shall be labeled "Confidential; Disclosure and Usage Subject to PCIC's Antitrust Compliance Office," and shall be preserved and maintained by PCIC's Antitrust

Compliance Office ready for possible inspection by or production to the United States.

    3.    Except to serve a purpose for which the information was communicated pursuant to ¶ IV.A.1., recipients of LOL information communicated pursuant to ¶ IV.A.1. shall not further communicate any such information to any other PCIC member or to any representative of any other provider of actuarial consulting services, and shall not further communicate or use any such information in any manner.

    B.    A PCIC member may communicate to PCIC's Antitrust Compliance Office and/or the independent third party, not more than twice per calendar year, historical and aggregated information about its usage of LOLs, solely for purposes of and only as reasonably necessary to accomplish PCIC's business requirements.

    C.    PCIC shall not require any member to adopt, implement, maintain, or engage in any policies, plans, or practices relating to LOL usage, except that:

    1.    PCIC may use historical and aggregated LOL information to accomplish PCIC's business requirements.

    2.    PCIC may deny or exclude a member as to professional liability insurance coverage in excess of $15 million, but only if:

    (a)    reinsurance to be obtained by PCIC for the denied or excluded coverage is conditioned upon usage of LOL and the member does not satisfy the conditions,

    (b)    reinsurance to be obtained by PCIC for the denied or excluded coverage is not otherwise reasonably commercially available at a reasonable price,

    (c)    at the members' request, PCIC will continue to provide the member with primary coverage of not less than $15 million,

    (d) PCIC provides the United States with written notice of the facts and circumstances of such denial or exclusion within ten business days of the denial or exclusion to the member, and

    (e) PCIC preserves and maintains ready for possible inspection or production all PCIC communications with reinsurers or members and other records relating to the exclusion or denial.

D. PCIC and its members shall not:

  1. Enter into or participate in any agreement between or among any of themselves with respect to any actual or potential usage of LOL, provided that the United States will not assert a violation of this provision based solely on parallel conduct of the PCIC members.

  2. Enter into or participate in any agreement with any representatives of any non-member providers of actuarial consulting services with respect to any actual or potential usage of LOL.

  3. Communicate with any representatives of any non-member providers of actuarial consulting services with respect to any Prohibited LOL Information.

E. Notwithstanding any provisions of this Final Judgment:

  1. PCIC may obtain client-specific LOL information from a PCIC member to the extent reasonably necessary to discuss a specific actual or threatened professional liability claim against the member, even if the LOL information is Prohibited LOL Information.

  2. PCIC members are not prohibited from unilaterally disclosing LOL information, including Prohibited LOL Information, to clients or prospective clients, to

the press or news media, and in connection with SEC or other regulatory filings, or LOL information that is in the public domain. Moreover, PCIC members are not prohibited from disclosing or receiving LOL information, including Prohibited LOL Information, when conducting business with another actuarial consulting firm in a vendor-vendee relationship, or when communicating with affiliated actuarial consulting firms based in other countries.

   3. PCIC and its members are not prohibited from engaging in conduct protected under the Noerr-Pennington doctrine.

   4. PCIC members are not prohibited from conducting due diligence with respect to LOLs in connection with an actual or contemplated (a) acquisition of another actuarial consulting firm; (b) purchase of an actuarial consulting business from another actuarial consulting firm; or (c) sale of an actuarial consulting business to another actuarial consulting firm. Moreover, to the extent reasonably necessary, PCIC members are not prohibited from conducting due diligence with respect to LOLs in connection with an evaluation of whether to become a shareholder or member of an insurance company (captive or not) other than PCIC.

F. Nothing in this Final Judgment shall prohibit or interfere with PCIC's right to grant or deny coverage, or admit or deny new members, for any reason unrelated to a current or prospective PCIC member's use of LOLs.

### V. Antitrust Compliance And Notification

A. PCIC shall establish an Antitrust Compliance Office, including appointment of an Antitrust Compliance Officer, within 30 days of entry of this Final Judgment, as follows:

   1. The Antitrust Compliance Office established by PCIC shall be staffed and

maintained independently of PCIC's members.

    2.    Each PCIC Antitrust Compliance Officer appointed pursuant to ¶ V.A. shall be an attorney with substantial experience with the antitrust laws and shall not have any other responsibilities with respect to PCIC's operations.

    B.    Each Antitrust Compliance Officer appointed pursuant to ¶ V.A. shall be responsible for establishing and implementing an antitrust compliance program for PCIC and ensuring PCIC's compliance with this Final Judgment, including the following:

    1.    The PCIC Compliance Officer shall furnish a copy of this Final Judgment (a) within thirty (30) days of entry of this Final Judgment to each director or officer of PCIC, each representative of a PCIC member working with PCIC, and each individual who receives LOL information pursuant to ¶ IV.A.1, and (b) within thirty (30) days to each person who succeeds to any such position.

    2.    The PCIC Compliance Officer shall obtain from each person designated in ¶ V.B.1. of this Final Judgment a signed certification that the person has read, understands, and agrees to comply with the provisions of this Final Judgment, to the best of his/her knowledge at the time the certification is made is not aware of any violation of this Final Judgment by PCIC that has not already been reported to the PCIC Compliance Officer, and understands that failure to comply with this Final Judgment may result in conviction for criminal contempt of court.

    3.    Upon learning of any potential violation of any provision of this Final Judgment, the PCIC Compliance Officer shall forthwith take appropriate action to terminate or modify the activity so as to comply with this Final Judgment. Any such action shall be reported in the annual compliance report required by ¶ V.B.4. of this Final

Judgment.

4.  For each year during the term of this Final Judgment, on or before the anniversary date of this Final Judgment, the PCIC Compliance Officer shall file with the United States a report as to the fact and manner of its compliance with the provisions of this Final Judgment. In addition, the report must identify any individual who received LOL information pursuant to ¶ IV.A.1.

C.  PCIC shall require, as a condition of membership in PCIC, that each PCIC member agree to establish an antitrust compliance program within 90 days of the entry of this Final Judgment, or with respect to a new PCIC member within 90 days of membership. Each PCIC member's antitrust compliance program must include the policies and procedures described in ¶ V.B.1-4.

D.  PCIC shall cause to be published a written notice in the form attached an Appendix to this Final Judgment, in Pensions & Investments and in Pensions & Investments Online, within sixty (60) days of the entry of this Final Judgment.

## VI.  Compliance Inspection

A.  For purposes of determining or securing compliance with this Final Judgment, or of determining whether this Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States shall, upon written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to the PCIC and its members, be permitted:

1.  Access during PCIC's and its members' office hours to inspect and copy,

or at the United States' option, to require PCIC and its members to provide copies of all books, ledgers, accounts, records, and documents in their possession, custody, or control, relating to any matters contained in this Final Judgment; and

   2. To interview, either informally or on the record, PCIC's and its members' officers, employees, or other representatives, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by PCIC or its members.

  B. Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, PCIC and its members shall submit written reports and interrogatory responses, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

  C. No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

  D. If at the time information or documents are furnished by PCIC or a PCIC member to the United States, PCIC or the member represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and PCIC or the member marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give ten (10) calendar days notice prior to

divulging such material in any legal proceeding (other than a grand jury proceeding).

## VII.   Retention of Jurisdiction

This Court retains jurisdiction to enable any party or any PCIC member that consents to be bound by this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## VIII.   Public Interest Determination

Entry of this Final Judgment is in the public interest.

## IX.   Term

This Final Judgment shall expire ten (10) years after the date of its entry.


Dated: _____

Court approval subject to procedures of Antitrust
Procedures and Penalties Act, 15 U.S.C. § 16



_____
United States District Judge

APPENDIX

On June 24, 2005, the United States Department of Justice filed a civil suit alleging that Professional Consultants Insurance Company ("PCIC") has engaged in certain practices in violation of Section 1 of the Sherman Act. PCIC is a Vermont-based captive insurance company that provides professional liability insurance to three actuarial consulting firms (hereafter referred to as "PCIC members"). PCIC has agreed to entry of a civil consent decree to settle this matter. The consent decree does not constitute evidence or admission by any party with respect to any issue of fact or law. The consent decree applies to PCIC and its consenting members, as well as their directors, officers, managers, agents, and employees.

The Justice Department's suit alleges that PCIC and its members engaged in the sharing of competitively sensitive information relating to the use of contractual limitations of liability (or "LOL") in actuarial consulting engagements with pension funds and other employee benefit plans. The consent decree is aimed at prohibiting PCIC and its members from sharing LOL information among themselves, or with other providers of actuarial consulting services.

Among other things, the consent decree prohibits PCIC and its members from communicating among themselves with respect to LOL information, except to a specified extent and subject to safeguards reflecting PCIC's reasonable need for and use of LOL information to provide its members with professional liability insurance coverage. The consent decree also prohibits PCIC and its members from entering into or participating in any agreement, among themselves or with any other providers of actuarial consulting services, with respect to any actual or potential use of LOL; and it prohibits PCIC and its members from communicating with other providers of actuarial consulting services with respect to any firm's current or future plans, polices, or practices relating to the use of LOLs. Under the consent decree, PCIC must require, as a condition of PCIC membership, that its members be fully bound by the terms of the decree. In addition, the consent decree also requires PCIC and its members to establish antitrust compliance programs and notification procedures.

Interested persons may address comments to Mark J. Botti, Chief, Litigation I Section, Antitrust Division, U.S. Department of Justice, 1401 H Street, N.W., Suite 4000, Washington, D.C. 20530, within 60 days of the date of this notice.